USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1856 UNITED STATES OF AMERICA, Appellee, v. JULIO FIGUEROA-ROMERO, Appellant. _____________________ No. 96-1254 UNITED STATES OF AMERICA, Appellee, v. ALFREDO CESPEDES, Appellant. ____________________ No. 96-1255 UNITED STATES OF AMERICA, Appellee, v. JOSE A. RIVERO-CABANAS, Appellant. ____________________ ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Julio Figueroa-Romero on brief pro se. _____________________ Antonio Bauza Torres, by appointment of the Court, on brief for _____________________ appellant Alfredo Cespedes. Jose A. Rivero-Cabanas on brief pro se. ______________________ Philip Urofsky, Attorney, Narcotic & Dangerous Drug Section, _______________ Department of Justice, John C. Keeney, Acting Assistant Attorney ________________ General, Theresa M.B. Van Vliet, Chief, and Guillermo Gil, United _______________________ ______________ States Attorney, on brief for appellee. ____________________ May 21, 1997 ____________________ Per Curiam. Alfredo Cespedes, Jose Antonio Rivero- __________ Cabanas and Julio Figueroa-Romero (collectively "defendants") pleaded guilty to drug trafficking and firearm counts in Puerto Rico Federal District Court. Each appeals his firearm conviction or sentence under 18 U.S.C. 924(c)(1), pursuant to the Supreme Court's more recent opinion in Bailey v. ______ United States, ___ U.S. ___, 116 S. Ct. 501 (1995). Cespedes _____________ also appeals the court's calculation of his criminal history category. We affirm. I. Background __________ The indictments and subsequent pleas were based on the following facts. Beginning in 1993, the defendants and several others entered into a conspiracy to smuggle controlled substances into Puerto Rico. They made several attempts to import illegal substances; some succeeded, some did not. Pre-sentence reports indicate that Rivero was the overall organizer and manager of the conspiracy. Cespedes managed distribution in Miami while Figueroa managed the operations based in Puerto Rico. The defendants' guilty pleas relate to incidents that occurred in November of 1993. The first incident took place in mid-November. Cespedes left Miami for Puerto Rico in order to assist Rivero in taking delivery of 3,000 pounds of marijuana. On the night of the planned delivery, Figueroa distributed guns to the other conspirators. The group waited -3- at the mouth of the Humacoa river for two nights but the delivery failed to materialize. They tried again approximately one week later; however, once again the drugs eluded their grasp. Rivero next made arrangements with a Colombian supplier to deliver cocaine by air drop. The group, again armed, succeeded in retrieving approximately twenty bales of cocaine from the ocean before they were intercepted by law enforcement officials. In April 1994, the defendants were indicted on ten drug trafficking and firearm counts. One year later, each defendant pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. 841(a)(1), 846, and one count of aiding and abetting the use and carrying of firearms during the commission of a drug trafficking crime, 18 U.S.C. 924(c)(1). II. Discussion __________ 18 U.S.C. 924(c)(1) imposes a mandatory five-year prison term on any person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." After the defendants were sentenced but prior to this appeal, the Supreme Court held in Bailey that ______ the word "use" was to be given its "ordinary or natural meaning." 116 S. Ct. at 506. Accordingly, to be convicted of "use" under the statute, a defendant must have "actively -4- employed the firearm during and in relation to the predicate crime." Id. at 509. The government concedes that none of ___ the defendants' actions rise to this level but maintains that the record contains sufficient facts to support the convictions under the "carry" prong. We have said that the Bailey Court recognized that ______ the "carry" prong of 924(c) would take on added importance in light of the new limitations on "use." United States v. _____________ Ramirez-Ferrer, 82 F.3d 1149, 1152 (1st Cir.), cert. denied, ______________ ____________ 117 S. Ct. 405 (1996). Recently, in United States v. _____________ Cleveland, 106 F.3d 1056 (1st Cir. 1997), we recognized _________ "carry" as applying both to transport in a vehicle and on a defendant's person. Id. at 1067. We declined to limit this ___ reading by adopting a requirement of accessibility, finding instead that "the distinguishing characteristic of "carry" is not the instant availability of the item carried, but the fact that the item is being moved from one place to another by the carrier. . . . Id. at 1068. This movement, however, ___ must have some nexus to the predicate offense. Ramirez- ________ Ferrer, 82 F.3d at 1152. Because the firearms charges were ______ for aiding and abetting, the convictions will stand "if one defendant is found to have to have carried a firearm in violation of 924(c)(1) and the others to have aided and abetted." Id. We examine each defendant's case in turn. ___ -5- A. Figueroa ________ Figueroa pleaded guilty to aiding and abetting the use or carrying of firearms in connection with the failed marijuana delivery and the cocaine air drop. He maintains that he himself did not use or carry any firearms and objected to the section of his Pre-Sentence Report ("PSR") stating that he possessed and distributed firearms to the co- conspirators. When Figueroa voiced this objection at his sentencing, the court ordered the government to make an offer of proof in support of its allegations that Figueroa "facilitated" and "distributed" firearms to the co- conspirators. The government informed the court that five co-conspirators were ready to testify that they received weapons from Figueroa during the unsuccessful attempt to import marijuana and during the cocaine drop. Figueroa responded that he would have impeached these witnesses' testimony by his own testimony and that of Rivera. The court found by a preponderance of the evidence that Figueroa facilitated and distributed the weapons to the co- conspirators on the two relevant occasions. This finding is enough to support carrying within the meaning of 924(c)(1) and under Cleveland. In order to _________ bring and distribute firearms to his co-conspirators, Figueroa would have had to transport them either in a vehicle or on his person. Either is enough to fulfill the -6- requirements of carrying as in this context, the required nexus to the predicate offense is unquestionably present. Figueroa, however, did not plead guilty to "carrying", but to aiding and abetting carrying, requiring that at least one other defendant carry a firearm. This requirement, however, is easily met. In his written objections to the PSR, Figueroa acknowledged that he had "pleaded guilty to participating in an illegal drug distribution scheme knowing (as an aider and abettor) that another co-conspirator(s) carried firearm(s) during the said _______ distribution. . . ." (emphasis in original).1 The evidence is sufficient to support Figueroa's guilty plea to the aiding and abetting of carrying under 924(c)(1). B. Rivero ______ Rivero, like the other defendants, pleaded guilty to aiding and abetting the use or carrying of firearms. Because we have found that Figueroa carried firearms within the meaning of 924(c)(1), Rivero's admitted status as Figueroa's co-conspirator in the drug trafficking offense is sufficient to uphold his guilty plea to the firearms count under Ramirez-Ferrer. Moreover, Rivero did not object to the ______________ section in his PSR that stated that Figueroa brought,  ____________________ 1. We also note that all three defendants at their change of plea hearings agreed with the government's version of the facts which stated that during the commission of the two drug trafficking offenses "the co-conspirators carried firearms." -7- distributed and hence, carried the firearms during the commission of a drug trafficking offense. Rivero also maintains that he should be allowed to withdraw his guilty plea because the court gave an imprecise definition of "aiding and abetting" when it accepted his plea. During the Rule 11 hearing the following colloquy ensued: THE COURT: The charge is aiding and abetting, which means if there is a group of persons that are in common consort carrying out an activity and one or more has weapons while the illegal activity is going on, if you are aiding and abetting in the importation of cocaine and persons are using weapons and you are charged as an aider or abettor in the possession of those firearms. You may not have had them personally on your person but if there were others that had them, then you could be charged as an aider and abettor and that is what you are charged with in Count 6. THE DEFENDANT: Yes, sir. THE COURT: And that is what you are pleading guilty to. THE DEFENDANT: Yes, sir. We fail to see, and Rivero has not explained, what was lacking in this explanation. Based on Figueroa's carrying of firearms we find that the evidence is sufficient to support Rivero's aiding and abetting the carrying of firearms.2  ____________________ 2. Rivero also complains that the court erred by using pre- Bailey law in its explanation of the firearms charge, ______ rendering the guilty plea non-knowing and voluntary. As we explained, ante, however, Rivero accepted the government's ____ -8- C. Cespedes ________ Unlike the other two defendants, Cespedes does not seek to overturn his guilty plea to the firearms charge. Instead, he contests the imposition of the five-year consecutive sentence required under 924(c), arguing for a concurrent sentence under U.S.S.G. 5G1.2(c).3 Although, strictly speaking, appeals to "correct a sentence" are more properly pursued via a habeas petition under 28 U.S.C. 2255, Cespedes' arguments touch on the validity of the conviction, making review appropriate in this forum. Cespedes contends "the elements of carrying or use were not present in relation to the Count One crime." We dispose of this assertion in short order. Cespedes' PSR stated that during the earlier unsuccessful attempt to import marijuana "Mr. Figueroa distributed several firearms among the co-conspirators" and that Cespedes, among others, "while in possession of firearms, waited at the mouth of the Humacao River . . . ." Cespedes did not object to this section of  ____________________ contention that Figueroa facilitated and distributed the firearms, negating any possible claim of ignorance or involuntariness. 3. Section 5G1.2(c) states: If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law. -9- the PSR. Given that we have already found that Figueroa's behavior meets the standard for carrying within the meaning of 924(c)(1), we see no reason to reverse Cespedes' sentence on this basis. Cespedes also claims that the court erred in including in his criminal history category computation an earlier withheld adjudication ending in a plea of nolo contendere. There are two prongs to his attack. First, he argues that a plea of nolo contendere can not be equated with a guilty plea for the purposes of the sentencing guidelines. We addressed this issue in United States v. Pierce, 60 F.3d _____________ ______ 886 (1st Cir. 1995), cert. denied, 116 S. Ct. 2580 (1996), _____________ where we concluded that an event which establishes guilt, whether "by guilty plea, trial, or by plea of nolo contendere," is includable in a defendant's criminal history computation. Id. at 892. ___ Cespedes' second argument is that the court should have allowed him to attack collaterally this same state charge because he was appointed counsel only at the "instant" he made the nolo contendere plea. For support he relies on Custis v. United States, 511 U.S. 485 (1994), which held that ______ _____________ a collateral attack on a prior state conviction at a federal sentencing proceeding can be had only if the defendant can claim total absence of counsel in violation of the Sixth Amendment. Id. at 496. Such was not the case here. ___ -10- Cespedes acknowledges that he had counsel when he gave the plea of nolo contendere. That it was, perhaps, not effective counsel because of the timing, is an argument to be made in a habeas petition pursuant to 28 U.S.C. 2255. The convictions and sentences of the defendants are ___________________________________________________ affirmed. ________ -11-