ZINTER, Justice
(concurring in part and concurring in result in part).
[¶ 61.] I concur on issues two and three. On issue one, I concur in result. I cannot join the lead opinion’s sua sponte reversal of more than twenty-five years of our jurisprudence relating to collateral attacks on predicate convictions used for sentencing enhancement. We should simply address the issue briefed and argued on appeal: whether the circuit court sufficiently canvassed Burkett about his Boy- *639 kin rights before he pleaded guilty in March 2003.
[¶ 62.] “Boykin requires that before a defendant pleads guilty, he ‘be advised of his [federal constitutional] rights relating to self-incrimination, trial by jury, and confrontation,’ and ‘that [he] intentionally relinquish or abandon known rights.’ ” State v. Bilben, 2014 S.D. 24, ¶ 5, 846 N.W.2d 336, 338 (alterations in original) (quoting State v. Smith, 2013 S.D. 79, ¶ 8, 840 N.W.2d 117, 120). Burkett contends that the March 2003 circuit court failed to adequately advise him of his Boy-kin rights. He also contends that the court failed to advise him that he would waive those rights by pleading guilty.[12] Both contentions fail.
[¶ 63.) At Burkett’s March 2003 arraignment, the circuit court simultaneously advised all defendants present of their rights, including their Boykin rights. The court then advised that a guilty plea would “give up [their] right to a jury trial and all rights that accompany a jury trial.” (Emphasis added.) The court also spoke with Burkett and his attorney to ensure Burk-ett understood those rights and that his guilty plea was voluntary.
Court: And [Defense Counsel] you’ve discussed with your client his statutory and constitutional rights and maximum penalties.
Defense Counsel: I have, Your Honor. Court: And you’re satisfied he understands them?
Defense Counsel: Yes, Your Honor. Court: Mr. Burkett, other than what’s been discussed in court, have there been any threats or promises made to you to get you to enter a plea of guilty? Burkett: No, sir.
[¶ 64.] The record reflects that the March 2003 circuit court fully advised Burkett of his Boykin rights. It also reflects that the court fully advised Burkett about the waiver effect of a guilty plea. In fact, the waiver advisement given to Burkett is the same advisement we approved in Bilben. See 2014 S.D. 24, ¶ 7, 846 N.W.2d at 338 (approving a general waiver advisement indicating that by pleading guilty, the defendant would “give up his right to a jury trial and all rights that accompany a jury trial”). Thus, like the defendant in Bilben, Burkett “was advised that a guilty plea would waive all previously enumerated rights associated with a trial, which included all three Boykin rights.” See id. ¶ 10. The circuit court did not err in denying Burkett’s motion to strike his March 2003 conviction.
[¶ 65.] The lead opinion presents thought-provoking arguments for reexamining the statutory and constitutional underpinnings that govern collateral attacks on predicate convictions in light of Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). But, as the lead opinion notes, “we have not yet considered the implications of Custis on King challenges in this state[.]” We must wait for another day to consider this matter. The lead opinion’s argument was neither presented below nor briefed on appeal. Therefore, it would be imprudent for us to adopt it sua sponte.
[¶ 66.] This country’s judicial system is grounded on an adversarial process in which opposing sides have notice and an opportunity to be heard before a decision is made. Bypassing the adversarial process today could result in just as significant an oversight as the lead opinion argues occurred in State v. King, 383 N.W.2d *640 854 (S.D.1986), and our cases since Custis. We should give the parties notice and an opportunity to be heard. We should at least hear the opposing argument before we adopt such a significant change in our law.
[¶ 67.] KONENKAMP and WILBUR, Justices, concur.

. Burkett does not argue that his guilty plea was unknowing or involuntary under a totality-of-the-circumstances analysis.