**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Robert William JONES, Defendant–Appellee.**

**No. 91–5826.**

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1992.

Decided Sept. 24, 1992.

As Amended Nov. 24, 1992.

Thomas Michael Gannon, U.S. Dept. of Justice, Washington, D.C., argued (E. Bart Daniel, U.S. Atty. and Alfred W. Bethea, Jr., Asst. U.S. Atty., Florence, S.C., on brief), for appellant.

James T. McBratney, Jr., Rogers, McBratney & Josey, Florence, S.C., for defendant-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

PHILLIPS, Circuit Judge:

This is the second appeal in this case. In the first, Robert William Jones challenged his conviction and sentence, as a career offender, for armed robbery and use of a firearm during a crime of violence. We held then that the district court had erred in declining, on the basis that it lacked jurisdiction, to consider Jones' attempt to challenge as unconstitutional a prior state felony conviction used to establish his career offender status. We vacated the sentence and remanded for resentencing, holding that the district court did have jurisdiction to consider the constitutional challenge, but also had discretion to impose conditions upon which the challenge could be raised and considered. On remand, the district court entertained Jones' challenge to his prior conviction and upheld the challenge, declining thereupon to sentence him as a career offender. The government then brought this appeal, challenging the court's failure to count the prior state conviction and, on its basis, to find Jones a career offender.

Because, exercising an informed discretion, the district court should not have found Jones' constitutional challenge sufficiently supported to warrant not "counting" the prior state conviction, we reverse and remand for re-sentencing Jones as a career offender.

### I

In June of 1988, Jones and his co-defendant, Donald Johnson, robbed Anchor Bank in Myrtle Beach, South Carolina, of $9,949. While Johnson brandished a revolver, Jones vaulted the bank counter and removed money from the teller stations. At trial, after evaluation of surveillance photographs and testimony by eyewitnesses, a jury found Jones guilty of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and use of a firearm during a crime

of violence, in violation of 18 U.S.C. § 924(c).

Jones' presentence report (PSR) revealed that in 1978 he had been sentenced to imprisonment for one year after pleading guilty in a New York court to attempted robbery. According to the PSR's account of the 1978 offense, Jones had approached the complainant and asked for a cigarette. The complainant responded that she did not have one and crossed the street to get away from Jones. Jones followed her, placed a knife near her throat and demanded money. According to the PSR Jones also placed his hand inside the complainant's blouse. After she pushed the hand away and fled, she found a police officer who searched the area, arrested Jones and recovered the weapon.

The PSR also stated that in January of 1981 a jury in New York convicted Jones of robbery, and that he was sentenced to a term of seven to fourteen years' imprisonment. As a result of the 1978 and 1981 convictions, and because Jones was more than eighteen years old when he committed the instant offense of armed bank robbery, the PSR recommended that, for purposes of the armed robbery count, Jones be sentenced as a career offender under Sentencing Guidelines § 4B1.1[1], with a total offense level of 34, a criminal history category of VI, and a guidelines sentencing range of 262–327 months.

At sentencing Jones argued that his 1978 New York conviction for attempted robbery should not be considered in determining his sentence calculation for the instant offense because the 1978 conviction had resulted from an unconstitutional, involuntary guilty plea. Jones contended that his attorney had spent only fifteen minutes with him before recommending that he plead guilty, that the attorney had pressured him by telling him that he faced 25 years in prison if he refused to plead guilty and accept one year's imprisonment, and

that his attorney incorrectly assured him that his conviction would eventually be converted from a felony to a misdemeanor.

The district court declined to address Jones' challenge, saying that it lacked jurisdiction to consider the constitutionality of his prior state conviction, even for the strictly limited purpose of deciding whether the conviction could be "counted" in sentencing for the instant offense. The district court adopted the recommendations contained in the PSR and sentenced Jones to a total of 322 months' imprisonment, which included a mandatory consecutive 60–month sentence on the weapons count.

On appeal we affirmed Jones' conviction, but vacated his sentence on the ground that the district court erred by declaring that it lacked jurisdiction to consider Jones' challenge to the constitutionality of his 1978 state conviction. *United States v. Jones*, 907 F.2d 456 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991) (*Jones I*). We determined that such challenges were authorized by Application Note 6 to § 4A1.2 of the Sentencing Guidelines, which then provided that "[c]onvictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." We stressed that although § 4A1.2 authorized a sentencing court to consider a challenge such as the one brought by Jones, the court remained free to impose strict procedural requirements on the presentation of such a challenge, and also retained its power under § 4A1.3 of the Guidelines to depart upwardly from the Guidelines range on the basis of conduct underlying the challenged conviction, even where that conviction had been determined to be invalid. *Id.* at 465–67.

Accordingly, we remanded Jones' case with instructions that the district court

> [f]irst determine whether the defendants' challenges were properly presented under the court's procedures. If so, the court should give the defendants such opportunity to present evidence concerning the prior convictions as the court

---

**1.** Section 4B1.1 defines Career Offender as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant

offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

deems necessary to a meaningful exercise of its sentencing authority.... If the defendants do carry their ... burden, the court may nonetheless consider making an upward departure under § 4A1.3 if it finds that the defendants' prior convictions provide reliable evidence of past criminal activity.

*Id.* at 469–70. After continuing the resentencing hearing for thirty days to allow Jones to gather evidence, the district court entertained his challenge.

At the hearing Jones again asserted that his attorney had spent insufficient time consulting with him and preparing his case, and that the attorney had told him that if he went to trial and was convicted he might receive a twenty-five year sentence. Jones contended that he was innocent of the crime, and that if he "had it to do over again today," he would not enter a guilty plea. Jones could not remember the name of the attorney who had represented him in 1978, and was unable to obtain a transcript of the 1978 plea proceeding.[2]

Based solely on Jones' uncorroborated testimony regarding what transpired before his 1978 plea, the district court ruled that the conviction was invalid. The court recognized that "it is an easy thing for a person to come forward and make a claim such as Mr. Jones makes in this case. And I wish there were more evidence available." However, in spite of recognizing the weakness of Jones' evidence, the court found that

taking into consideration the age of Mr. Jones at the time this plea was entered [nineteen], and the small amount of time he was able to confer with an attorney, suggests that he did not receive the effective assistance of an attorney, certainly for the purpose of my considering that [that] offense may be taken into consideration to classify him a career offender.

And so, I'm of the view that Mr. Jones must prevail on his challenge.

Joint Appendix at 251. The court then resentenced Jones as a non-career offender to a total of 100 months' imprisonment.

The government now appeals Jones' resentencing.

## II

Having held in *Jones I* that the district court had jurisdiction to entertain first instance constitutional challenges to prior convictions, we remanded for exercise of that jurisdiction. *Jones I*, 907 F.2d at 469–70.[3] But our instructions did not attempt to spell out in detail how the court should proceed. We were content to admonish—sufficiently we thought—that given the special difficulties that entertaining first instance challenges to prior state convictions might entail, the sentencing court had, and should exercise, "broad discretion, within bounds of due process, to control the manner of the challenge's presentation." *Id.* at 465. By this we meant to convey that the court could and should impose

---

**2.** Apparently, the court reporter who recorded the 1978 plea hearing took notes in an unusual shorthand that only she could transcribe. She died in the interim between the 1978 hearing and Jones' resentencing hearing for the instant offense. Thus, in effect, no record exists of the 1978 hearing.

**3.** Since our decision in *Jones I*, the Sentencing Commission has amended Application No. 6 to Guideline § 4A1.2, effective November 1, 1990. Following that amendment, the circuits that have considered its effect have reached conflicting positions both as to its substantive implications, *compare United States v. Jakobetz*, 955 F.2d 786, 805 (2nd Cir.1992) (under amendment, sentencing courts retain discretion to make first-instance adjudications of invalidity); *United States v. Canales*, 960 F.2d 1311, 1315–16 (5th Cir.1992) (same); *United States v. Cornog*,

945 F.2d 1504, 1511 (11th Cir.1991) (same); *with United States v. Hewitt*, 942 F.2d 1270, 1276 (8th Cir.1991) (under amendment, sentencing courts may only entertain challenges to already invalidated convictions), and as to whether it should apply retroactively, *compare United States v. Canales*, 960 F.2d 1311, 1314 (5th Cir. 1992) (yes), *with United States v. Guthrie*, 931 F.2d 564, 570 n. 4 (9th Cir.1991) (no).

Because the Government has not on this appeal contended for a retroactive application of the amendment in a way favorable to its position, and in view of our disposition favorable to that position on other grounds, we can reserve decision both as to the amendment's substantive implications and its possible retroactivity. We decide only the proper application of the pre-amendment Guideline and its Application Note 6, as interpreted in *Jones I*, to the sentencing issue presented on this appeal.

conditions for its consideration of particular challenges reflecting the special difficulties that those challenges might present for federal sentencing courts. Among the difficulties expressly or implicitly recognized in our opinion were the absence of the sentencing state as a party, possible staleness of the claims, the inadequacy or unavailability of state court records and witnesses from "far-flung jurisdictions," and the danger of "unduly protracted or delayed sentencing." *Id.* And we were at pains to emphasize, as we earlier had emphasized in *United States v. Davenport*, 884 F.2d 121, 124 (4th Cir.1989), that the burden was on a defendant to "show" the prior conviction's invalidity. *Id.* at 464.

■ It is now obvious from the district court's resentencing process and the result it reached, that our instructions did not sufficiently convey our intended meaning in this regard. As indicated, the court imposed no special conditions of presentation and proof designed to guard against the very inadequacies of proof envisioned in *Jones I* and encountered here: no informing state court records and no corroborating testimony by disinterested witnesses supporting the defendant's vague, conclusory assertions about decade-old events. The district court, however, seemed to believe that it should simply deal with the matter as an ordinary problem of proof. Even though the only evidence advanced to meet the defendant's burden was his own self-serving, vague testimony about the representation provided him many years ago by an unidentified lawyer in a distant state which was not a party to the proceedings, the court apparently considered that it must accept the testimony as proof in view of the defendant's then young age and the absence of any directly contradictory evidence. In so ruling, the district court did not exercise the type of "informed discretion" that we sought to require in *Jones I*, and we must therefore vacate that ruling and the resulting sentence.

Ordinarily, where we find error based upon a misapprehension of the controlling law—here, of the factors that should have guided an exercise of discretion—we might consider the appropriate remedy to be a remand for reconsideration in light of the correct principles. That might be thought especially appropriate when the misapprehension could be traced—as arguably may be the case here—to an insufficiently clear mandate from this court. We do not think it appropriate here, however. Instead we hold that under the clear implications of *Jones I*, the proof of constitutional invalidity offered here could not properly support a discretionary refusal to count the prior state conviction here in issue.

To explain why is best done by now making more explicit the factors that we sought to identify in *Jones I* as those that should guide discretion in this matter.

The situation out of which the problem arises largely defines the nature of the discretionary decision it requires—and reveals why it is a discretionary rather than legally controlled one. The question always is whether a presumptively valid (not previously invalidated) criminal sentence of a state court should—in a federal criminal proceeding to which that state is not a party—be treated for federal sentencing purposes as constitutionally invalid, hence as a non-factor for federal sentencing purposes. That obviously is not a decision to be taken lightly. By definition, the sentence has not previously been adjudicated to be invalid by a competent state or federal court in a direct or collateral proceeding to which the sentencing state was a party. Ordinarily that will be so because of a failure by the federal defendant to have attempted the attack, or because of his failure to have succeeded if he made the attempt. And ordinarily—though not necessarily—a failure to have made the attempt will bespeak a recognized lack of basis for doing so, thus raising in question the basis now claimed for making the attempt in an even more attenuated collateral setting.

To this general difficulty posed by the defining situation, there will possibly be others more specific to the individual case. They have already been mentioned: a long lapse of years; unavailable or inadequate state court records; distance from the

state sentencing court with consequent difficulty in finding and obtaining the testimony of witnesses. To the extent these exist as added problems, they simply increase the hesitation with which a federal sentencing court should entertain and possibly uphold such a challenge.

And there is a final limiting factor. It is that the defendant probably, though not necessarily, has another avenue—more traditional, and more protective of comity and federalism values—for seeking to avoid use of the prior state conviction for federal sentencing purposes. Depending on the precise circumstances, including the chronology of events, he may yet be able to make a state or federal collateral attack upon the state sentence, and then, if successful, upon any federal sentence in which it was a factor. *See, e.g., United States v. Guthrie,* 931 F.2d 564, 571–73 (9th Cir. 1991).

Though in *Jones I* we rejected the view that this factor standing alone suffices to preclude a federal sentencing court from even entertaining such a challenge, we did not deny its importance in deciding whether and how to do so in particular cases. The fact that traditional habeas or post-conviction remedies have been—and especially if they remain—available to the defendant, obviously bears heavily—indeed could be decisive—on whether to entertain, then to uphold, a first-instance challenge at sentencing.

■ Given these considerations, we think the steps to be taken and the factors to be considered by a federal sentencing court making the discretionary decision whether, and if so how, to entertain a first-instance challenge at sentencing become obvious. Without intending to lay down in detail a required procedure, the following general approach may be suggested.

First, the defendant should be required, early on, to identify the precise constitutional challenge intended. *See Jones I,* 907 F.2d at 465. Next, he should be required to identify the anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evi-

dence, or a combination—with an estimate of the process and the time needed to obtain the required evidence. At this point, a court might well make a preliminary decision whether to entertain any further the challenge as identified, including the anticipated process for obtaining and making proof.

To the extent the proof forecast is represented to be readily available, to be in official documentary form, and to be dispositive of invalidity as a matter of law, its consideration obviously is indicated. In such a circumstance, negative factors such as lapse of time, distance from the state forum, lack of corroborating testimonial evidence, and even the continued availability of habeas or post-conviction remedies should have little if any weight. To require a defendant under such circumstances to go the alternative route of a § 2254 challenge, which might require preliminary exhaustion of state remedies, followed by a § 2255 attack on the enhanced federal sentence, makes no sense, and obviously runs counter to basic concerns for judicial economy. A prime example of such a circumstance is, of course, an uncounselled, hence unconstitutional, state court conviction, whose invalidity appears from available state court records. *See Jones I,* 907 F.2d at 466.

On the other hand, to the extent the challenge identified is one dependent upon proof of historical facts likely to be in dispute; the forecast means of proof is by testimonial evidence from witnesses not yet located or verified; the dispositive facts relate to events distant in time and place; and the estimate of time required to obtain proof indicates a protracted delay in imposing sentence, a discretionary decision not to entertain the proposed challenge obviously would be justified. Though the continued availability of habeas or post-conviction remedies would make such a discretionary decision even more solid, that should not be decisive.

These are the extreme situations. There are of course countless variants in between. But the factors to be weighed are those obvious ones that pretty clearly dic-

tate the exercise of discretion in these two examples at opposite ends of the spectrum.

The situation presented to the district court here obviously is a classic example of the latter extreme. The challenge is for ineffective assistance of counsel—notoriously a fact-specific one difficult of proof under any circumstances. The only evidence proffered is the self-serving testimony of the defendant. There are no informing state court records, or corroborating testimonial evidence. The events on which ineffectiveness of counsel turns occurred more than a decade ago in a distant jurisdiction. As soon as these aspects of the challenge appeared (and the record indicates that they were all apparent before proof was allowed), the district court here would have been well within its discretion in declining to allow the challenge to proceed further.

The only factor pointing toward further consideration of the challenge was that the defendant by now probably could no longer mount a § 2254 challenge. *See Jones I*, 907 F.2d at 461 n. 2. Assuming, without deciding, that because of this factor it was within the court's discretion to allow the challenge to proceed, the proof then proffered cannot be held sufficient to support the court's finding of invalidity.

There may be circumstances under which a defendant's self-serving testimony, uncorroborated by other testimonial or documentary evidence, about events this distant in time could properly be thought to carry his heavy burden of proof, but the vague, inconclusive testimony proffered here about the conduct of an unidentified lawyer, could not be held to carry that burden as a matter of law. *See United States v. Boyer*, 931 F.2d 1201, 1205 (7th Cir.1991); *United States v. Mims*, 928 F.2d 310, 312–13 (9th Cir.1991). The district court's acceptance of the proof as sufficient for the purpose accordingly cannot be held to be the exercise of an informed discretion in this matter, and must be vacated.

1. I agree with the majority that the holding in this case is limited. The parties have not put at issue the question of whether the 1990 amendment to Application Note 6 affects the holding

### III

The sentence imposed by the district court is vacated. The case is remanded for resentencing in which the 1978 New York State court conviction for attempted robbery shall be counted for sentencing purposes.

SO ORDERED.

WILKINSON, Circuit Judge, concurring:

I agree that Jones' 1978 New York conviction must be counted for federal sentencing purposes and that Jones must be sentenced as a career offender.

The reason for my view is simple. I do not believe that a federal sentencing proceeding is at all an appropriate forum for reviewing the constitutionality of a defendant's prior state convictions. I expressed this view in a dissenting opinion to *Jones I*, *see* 907 F.2d at 470–84. Nonetheless, with respect to sentencing proceedings which took place prior to November 1, 1990, I must concede that *Jones I* is the law of the circuit, as that decision has now been amplified in *Jones II*.[1]

The amplification of *Jones I* in the instant case is important. The majority has now made clear that district courts can decline to entertain challenges by a defendant to his prior state convictions. In addition, the majority has taken pains to point out the obvious difficulties, from the standpoint of both comity and practicality, of reviewing constitutional challenges to state convictions in a federal sentencing proceeding.

I welcome this clarification. It is no secret that the Sentencing Guidelines, for all their virtues, have imposed a significant burden upon our district judges. To require those judges to entertain first-instance challenges to prior state convictions, or to conduct evidentiary hearings upon the same, would make the administration of the Guidelines very nearly impossible. It

in *Jones I*, nor whether the amendment is retroactive. I thus reserve comment upon that question.

**112**

would also diminish the role of the states in our federal system by permitting defendants to challenge state convictions in proceedings where the state is not even a party and where state remedies with respect to the conviction have never been pursued.

I am pleased that the majority acknowledges these significant problems. Under the ground rules laid down by the majority, I suspect that it will be the unusual case in which a challenge to a presumptively valid state conviction is entertained in a Guidelines sentencing proceeding. Most of the challenges to state convictions that routinely come before us—claims of ineffective assistance of counsel, of incriminating statements taken involuntarily, of unlawful line-ups or show-ups, of bias in the selection of the jury, of prosecutorial failure to disclose potentially exculpatory information, of impermissible curtailment of cross-examination, of involuntary pleas of guilty, and, of course, of insufficiency of the evidence when the case does go to trial— would require a significant expenditure of judicial resources to resolve, especially if there are no state proceedings and findings to which a federal court can defer. These claims will only rarely be amenable to first-instance resolution on the basis of indisputable documentary proof. Moreover, even if meritorious, such claims are almost invariably subject to some form of harmless error inquiry, which requires careful attention to the details of the trial record and which commends these claims for resolution in state court.

Thus, in the typical case, a district court will be well within its discretion (and within the *Jones II* guidelines) to respect the state interest in the finality of presumptively valid state convictions and to require that any challenges to such convictions in federal court come through the customary channels of collateral attack. *See United States v. French*, 974 F.2d 687, 701 (6th Cir.1992) (underscoring the importance of

federalism and finality in this context); *United States v. Canales*, 960 F.2d 1311, 1316 (5th Cir.1992) (emphasizing the importance of comity, "especially where the challenged conviction is by a state court"). Here, of course, the district court abused its discretion in failing to follow this course.[2] In vacating the sentence of the trial judge, this court has sent a salutary signal that challenges to state convictions in Guidelines sentencing proceedings face tall obstacles. It is a signal that I earnestly hope will be heeded.

**2.** That Jones may no longer have available a § 2254 attack on his 1978 New York conviction is not material. As the court notes, he had the opportunity to contest the constitutionality of his conviction—ordinarily "a failure to have made the attempt will bespeak a recognized lack of basis for doing so, thus raising in question the basis now claimed for making the attempt in an even more attenuated collateral setting."