46 F.3d 1128
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Everett PERRY, Defendant-Appellant.
 No. 93-5498.
 United States Court of Appeals, Fourth Circuit.
 Argued May 13, 1994.
Decided Feb. 1, 1995.
 
 ARGUED: Edward Henry Weis, Assistant Federal Public Defender, Charleston, WV, for appellant. Sharon Mullen Frazier, Asst. U.S. Atty., Huntington, WV, for appellee. ON BRIEF: Hunt L. Charach, Federal Public Defender, Charleston, WV, for appellant. Charles T. Miller, U.S. Atty., Huntington, WV, for appellee.
 Before MURNAGHAN, Circuit Judge, LEGG, United States District Judge for the District of Maryland, sitting by designation, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 James Everett Perry was convicted of bank robbery in violation of 18 U.S.C. Sec. 2113(a) and the use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. Sec. 924(c)(1). Perry raises four issues on appeal. He contends that (1) violation of Perry's speedy trial right required dismissal of the indictment, (2) the bank teller's testimony regarding her out of court identification of Perry should not have been admitted because the identification procedure was impermissibly suggestive, (3) the trial judge violated Fed.R.Crim.P. 11 by allowing Perry to stipulate that the bank was FDIC insured, which is an element of the crime charged, without conducting a colloquy to determine that Perry's stipulation was knowingly and voluntarily entered into, and (4) the trial judge made various errors in sentencing the defendant. This Court affirms Perry's convictions and sentence.
 
 
 2
 * The evidence at trial showed that sometime early in 1989, Perry and his girlfriend, Linda Oliveria, went from their home in Florida to Huntington, West Virginia to visit Perry's aunt. From Huntington, they travelled to Crum, West Virginia to visit Sandra Dillon, a longtime friend of Perry. During his visit, Perry purchased a .38 caliber Smith & Wesson and also obtained ammunition from Dillon. Perry and Oliveria then returned to Perry's aunt's home in Huntington.
 
 
 3
 Shortly after their return to Huntington, Perry and Oliveria packed their belongings and placed them in Oliveria's 1984 black Chevette. On the morning of February 8, 1989, they left the aunt's residence and drove to the Fairfield Plaza parking lot. The two sat in the car and watched the One Valley Bank as it opened for business on the other side of Hal Greer Boulevard. After several hours of this, Perry directed Oliveria to drive the car to Fifteenth Street, a residential street on the other side of the bank, to leave the motor running and the car door unlocked, and to wait for his return. Perry walked to the bank with the Smith & Wesson on his person, but soon returned to the car explaining that the timing was wrong.
 
 
 4
 Shortly thereafter, Perry again approached the bank and entered the lobby. He walked up to a teller, Margaret Terry, and demanded money. He showed Terry the gun and gave her a white plastic bag in which to place the cash. Perry demanded that the "old" money, which had been set aside to be taken out of circulation, be placed in his bag. During the robbery, Perry was also observed by the only other teller on duty, Karen Waugh. Perry put the bag containing the money inside his jacket and left in the direction of Fifteenth Street, where he had instructed Oliveria to wait for him.
 
 
 5
 Perry then told Oliveria to follow a circuitous route out of town and then out of West Virginia as well. As Oliveria drove, Perry counted the money in the bag. Oliveria remembered that some of the money looked old. Once away from West Virginia, Perry had Oliveria "launder" a few of the larger bills by purchasing small items, returning the change to him. During the trip, Perry also called Sandra Dillon and told her to watch the evening news, during which Dillon saw the surveillance photograph from the robbery and recognized the robber as Perry. When Oliveria and Perry later returned to Dillon's house, Dillon confronted Perry with what she had seen on the news. In response, Perry smiled and laughed. Perry returned by himself to Dillon's residence on subsequent occasions. On these visits, he told Dillon that he needed a place for Oliveria to stay if he were apprehended and expressed his concern that Oliveria would turn him in some day.
 
 
 6
 After he was apprehended, Perry was indicted for bank robbery (count one) and the use of a firearm during the commission of a crime of violence (count two). Following a jury trial, Perry was convicted on both counts. The district court sentenced him to a prison term of 376 months.[1] Perry timely appealed.
 
 II
 
 7
 Perry's first claim of error is the district court's denial of his motion to dismiss the indictment for violation of his speedy trial rights. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four factors to be considered in reviewing a claim that a defendant's right to a speedy trial has been violated. We review the district court's legal conclusion on this issue de novo. United States v. Sarno, 24 F.3d 618, 622 (4th Cir.1994); United States v. Wright, 990 F.2d 147, 148 (4th Cir.), cert. denied, 114 S.Ct. 199 (1993).
 
 
 8
 The first of the Barker factors, the length of the delay, is a type of "triggering mechanism." Barker, 407 U.S. at 530. There must be a delay that is "presumptively prejudicial" before the court will make further inquiry into the other factors. Id. In this case, the government concedes that the delay in bringing this case to trial is sufficient to trigger a review of the Barker criteria.
 
 
 9
 The second Barker factor is the reason for the delay. Id. at 531. In the instant case, the delay was caused by Perry's indictment and trial for bank robbery in Alabama. The government waited to seek indictment of Perry in West Virginia until after the Alabama proceedings had been concluded. The government explained that it delayed moving ahead in West Virginia so that Perry would not be placed in the difficult position of simultaneously defending two separate cases in two geographically distant jurisdictions.
 
 
 10
 There is no evidence to suggest that the government's explanation is pretextual or that the government engineered the delay in order to give it an advantage in the West Virginia case. See id. The Speedy Trial Act itself recognizes the potential problem created by simultaneous trials, and excludes from the speedy trial computation "delay resulting from trial with respect to other charges against the defendant." 18 U.S.C. Sec. 3161(h)(1)(D).
 
 
 11
 The third Barker factor is whether the defendant has timely and vigorously asserted his speedy trial right. Barker, 407 U.S. at 531-32. Defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.... [F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id.
 
 
 12
 Perry was initially indicted on March 25, 1992. A superseding indictment was handed down on July 16, 1992, and Perry was arraigned on the superseding indictment on October 27, 1992. During this time Perry's counsel was kept apprised of the proceedings in Alabama and their implications for defendant's West Virginia trial. Perry raised no objection to the delay until March 3, 1993, almost three months after the originally scheduled trial date. Trial began shortly thereafter, on April 7, 1993.
 
 
 13
 The fourth and final Barker factor is prejudice to the defendant. Id. at 532. This factor warrants the most serious consideration and involves a determination of whether the defendant is unable adequately to defend against the charges due to the delay. United States v. Valenzuela-Bernal, 458 U.S. 858, 869 (1982). In the instant case, the claimed prejudice was Perry's inability to present the testimony of a gas station attendant, Jarrell Donovan Kelly, who would have testified that a person matching the robber's description left the general vicinity in a brown Dodge van.[2]
 
 
 14
 The substance of Kelly's testimony was presented to the jury through the testimony of Detective Beckett, who told the jury what Kelly had told him after the robbery. The Court can find no prejudice to defendant from the loss of Kelly as a witness. First, the substance of what he observed was presented to the jury even without his live testimony. Second, in light of the overwhelming evidence against the defendant, the fact that Kelly would have testified that a person matching the robber's general description left the area in a brown van does little to exonerate the defendant. Defendant's case was not prejudiced by the loss of Kelly's live testimony.
 
 
 15
 In summary, the Court has weighed the four Barker factors in determining whether Perry's right to a speedy trial was violated. The Court concludes that it was not.
 
 III
 
 16
 Perry's second claim of error is that the court improperly admitted the identification testimony of teller Karen Waugh.[3] Perry claims that the pre-trial identification procedure was unduly suggestive.
 
 
 17
 Whether an out-of-court identification procedure is constitutionally valid is a mixed question of fact and law, and is reviewed with due deference to the ruling of the district court. Sumner v. Mata, 455 U.S. 591, 597-8 (1982). Prior to trial, a full evidentiary hearing was held to determine the admissibility of the out of court identification. The district court found that neither the photographic array nor the identification procedure was unduly suggestive. (J.A. 32).
 
 
 18
 In challenging the admissibility of the identification evidence, Perry must first show that the photo array was impermissibly suggestive. Neil v. Biggers, 409 U.S. 188, 196-97 (1972); Manson v. Brathwaite, 432 U.S. 98 (1977). If he does so, then the court must determine whether, under the totality of the circumstances, the photo identification was sufficiently reliable to preclude a substantial likelihood of misidentification.[4] Manson, 432 U.S. at 106-7, 114.
 
 
 19
 In support of his claim, Perry advances two arguments. First, he contends that statements made by Detective Tim Murphy of the Huntington Police Department when he showed Ms. Waugh the photographs were suggestive. Detective Murphy testified at a pretrial hearing that on August 14, 1991 he visited Waugh and informed her that he was there in connection with the robbery of the One Valley Bank. Waugh testified that Murphy told her the police had caught the man they believed committed the crime. (J.A. 118). He asked her to look at six photographs and to tell him if she recognized any of the individuals. Waugh identified Perry as the bank robber. The court is unpersuaded by Perry's contention that Detective Murphy's statements were suggestive. The obvious purpose of a photo-spread is to determine whether the eyewitness can pick out the criminal. It is hardly prejudicial for the police to express their belief that one of the photographs is of the robber.
 
 
 20
 Second, Perry argues that the photo spread was suggestive in that his face was distinctive, being the only face in the photo-spread not round in shape. The Court has examined the photo-spread in question, and finds that Perry's face did not stand out among those displayed. All of the men in the display are roughly the same age, all have beards, and all have the same length hair.
 
 
 21
 Because the photo-spread was not suggestive, it is unnecessary to analyze the factors discussed in Manson. Id. at 114-16. The Manson factors are only relevant in determining the admissibility of identification testimony that has been determined to be suggestive in nature. See e.g. Passman v. Blackburn, 652 F.2d 559, 569 (5th Cir.), cert. denied, 455 U.S. 1022 (1982).
 
 IV
 
 22
 Perry's third claim of error concerns the trial court's instruction to the jury that it was bound to accept a stipulation, entered into by both parties, that the deposits of One Valley Bank were insured by the FDIC. A written stipulation to this effect was signed by all counsel and Perry, and introduced into evidence along with a copy of the bank's FDIC certificate.
 
 
 23
 Perry argues that the district court's instruction to the jury, that it was bound by the stipulation as to that element of the offense, amounted to a partial guilty plea. By agreeing to the stipulation, the defense relieved the prosecution of its obligation of proving that the bank was federally insured, an element of the offense with which Perry was charged. See United States v. Clark, 993 F.2d 402, 406 (4th Cir.1993). The trial court improperly accepted the stipulation, Perry contends, without personally inquiring of Perry whether he entered into it knowingly, intelligently and voluntarily as set out in Fed.R.Crim.P. 11.
 
 
 24
 Perry, however, has failed to present any evidence to cast doubt on the stipulation's validity. At oral argument his counsel candidly conceded that the bank was indeed federally insured. See United States v. Reedy, 990 F.2d 167, 169 (4th Cir.), cert. denied, 114 S.Ct. 210 (1993).
 
 
 25
 Even assuming Perry is correct in his assertion that Rule 11 is somehow implicated by the judge's instructions to the jury, this instruction would constitute no more than harmless error. See Fed.R.Crim.P. 11(h); Rose v. Clark, 478 U.S. 570 (1986). The stipulation at issue in this case was not an admission of guilt. Perry never questioned that the bank was robbed or whether its deposits were federally insured. The sole issue challenged by the defense was one of identity.
 
 V
 
 26
 Perry's fourth claim of error challenges the district court's calculation of his sentence for his bank robbery conviction under count one of the indictment. At the time of sentencing, Perry was serving two unexpired federal terms of imprisonment. One was for a bank robbery that occurred in the Eastern District of Kentucky; the second was for a bank robbery and use of a firearm in the Middle District of Alabama.
 
 
 27
 Perry contends that the district court committed error by refusing to entertain his challenges to the method by which his sentences in Alabama and Kentucky were calculated. In the district court, Perry raised three issues, only two of which he is pressing on appeal. Compare J.A. 301-04, 386-87 with Appellant's Brief at 21-25.[5] They are the following:
 
 
 28
 (1) that the Alabama court erred by increasing his offense level by two points under U.S.S.G. Sec. 3B1.1(c) for having supervised an accomplice, the get-away driver. According to Perry, the driver needed no supervision or management in carrying out her role;[6] and
 
 
 29
 (2) that in the Eastern District of Kentucky bank robbery prosecution, Perry received a six-month criminal contempt sentence for refusing to shave his beard.[7] (J.A. at 367). The Kentucky court also gave Perry a two-level upward adjustment, from 25 to 27, for obstruction of justice because of this refusal. Perry argues that under application note 6 to U.S.S.G. Sec. 3C1.1, when the same conduct is involved, double punishment for obstruction of justice and contempt is prohibited. Following oral argument on appeal, we were advised that the United States Court of Appeals for the Sixth Circuit vacated Perry's sentence and remanded for resentencing. United States v. Perry, No. 93-5743, 1994 WL 386792 (6th Cir. July 27, 1994).
 
 
 30
 An analysis of Perry's claim requires an understanding of the mechanics of the guideline in question. U.S.S.G. Sec. 5G1.3(c) governs the sentencing of a defendant subject to an undischarged term of imprisonment. It instructs the district court, in fashioning an appropriate incremental punishment, to determine hypothetically what Perry's guideline range would have been if a sentence for all three bank robberies were imposed by one judge at one sentencing. As a practical matter, this exercise informs the lower court in deciding (i) whether the sentence for the third conviction should run consecutively or concurrently with the previous two, and (ii) where within the guideline range for the third offense the defendant should be placed. See U.S.S.G. Sec. 5G1.3(c)(n.3) and illustrations.[8]
 
 
 31
 When sentencing a defendant who is already subject to an undischarged term of imprisonment, the district court, by statute, has discretion to run the new sentence concurrently or consecutively with the old sentence. 18 U.S.C. Sec. 3584(a) (1988); see United States v. Stewart, 917 F.2d 970 (6th Cir.1990). In making this determination, Congress has directed the district court to "consider" the applicable guidelines and policy statements in effect at the time of sentencing. 18 U.S.C. Sec. 3584(b) (1988); 18 U.S.C. Sec. 3553(a) (1988); see United States v. Coleman, 15 F.3d 610, 611-12 (6th Cir.1994).
 
 
 32
 The methodology outlined in 5G1.3 is not intended to be an inflexible formula; instead, it is an optional framework designed to assist the trial judge in exercising his considerable sentencing discretion. As the Court of Appeals for the Sixth Circuit wrote in Coleman, a court may resort to a simpler method in order to reach the practical equivalent of the more complex computation. Coleman, 15 F.3d at 613.
 
 
 33
 This view was recently approved by the Court of Appeals for the Ninth Circuit in United States v. Redman, No. 93-30437, 1994 WL 487364 (9th Cir. September 12, 1994). The Redman court held that the sentencing judge should attempt to calculate the reasonable incremental punishment that might be imposed under the methodology in the commentary. Nevertheless, the judge is free to use another method if, in his discretion, the other method is appropriate. Id. at * 5.
 
 
 34
 In Perry's case, the sentencing judge demonstrated that he understood the purpose and methodology of Sec. 5G1.3.[9] As directed by Sec. 5G1.3, he computed the instant offense level for count one, bank robbery in violation of 18 U.S.C. Sec. 2113(a). The trial court's calculation of offense level 22 is not in dispute. (J.A 354-60). He also correctly assessed Perry's criminal history at VI, yielding an instant offense range of 84-105 months. (J.A. 323)
 
 
 35
 Next, the trial judge engaged in a "grouping exercise" wherein he hypothetically aggregated, under U.S.S.G. Sec. 3D1.4, the three bank robberies as if a single sentence were being imposed at one time.[10] In doing so, the trial judge borrowed the offense levels for the Kentucky bank robbery (level 27) and the Alabama bank robbery (level 21) as determined by the sentencing courts. Using the multiple-count adjustment formula found in U.S.S.G. Sec. 3D1.4, the judge arrived at a combined offense level 29, criminal history category IV.[11] The total punishment guideline range for all three robberies was 121-151 months. (J.A. 323).
 
 
 36
 The judge next ascertained that Perry faced an undischarged term of 123 months for the Kentucky and Alabama bank robberies.[12] With this in mind, he sentenced Perry to 136 months to run concurrently with the other sentences.[13]
 
 
 37
 Perry's claim essentially is that the sentencing court was obligated to review for error the offense levels calculated by the Kentucky and Alabama courts instead of adopting those levels for the purpose of the "grouping exercise." We conclude that it was not obliged to entertain challenges to those offense levels for two reasons.
 
 
 38
 First, as discussed above, the prescription laid out in Sec. 5G1.3 is advisory only. Accordingly, the sentencing judge has discretion to decide whether he will entertain any challenges to the undischarged sentences.
 
 
 39
 Second, it would be impractical to require the West Virginia court to hear challenges to Perry's prior federal sentences. In an analogous case, this Court held that a district court is not, absent extraordinary circumstances, obligated to hear constitutional challenges to predicate state convictions in federal sentencing proceedings. United States v. Custis, 988 F.2d 1355 (4th Cir.1993), aff'd, 114 S.Ct. 1732 (1994).[14] In Custis, this Court, recognizing the practical difficulties in requiring a sentencing court to review the record from a distant jurisdiction, concluded:
 
 
 40
 The multiple violations alleged by Custis could only have been established after fact-intensive investigations into state proceedings that are best undertaken in a different setting.... No constitutional or statutory provision, however, obliges a federal sentencing court to entertain such challenges in the first instance.
 
 
 41
 Id., 988 F.2d at 1363.
 
 
 42
 The same reasoning applies here. The West Virginia court lacked the benefit, that the Alabama and Kentucky courts had, of hearing the trial testimony, examining the exhibits, reviewing the presentence reports, and conducting sentencing hearings. Moreover, it would be unwise to require a busy sentencing court to sit in appellate review of prior sentences.
 
 
 43
 Our holding does not leave a defendant without a remedy. If successful on appeal in attacking his previous federal conviction or sentence, he may challenge his federal sentence collaterally under 28 U.S.C. Sec. 2255.[15] When a defendant files a section 2255 petition based on an appellate decision vacating his prior federal sentence, the district court will have to determine whether this change in circumstances warrants, in the exercise of its discretion, a change in sentence under U.S.S.G. Sec. 5G1.3(c). See United States v. Guthrie, 931 F.2d 564, 572-3 (9th Cir.1991), cited with approval in United States v. Jones, 977 F.2d 105, 110 (4th Cir.1992).
 
 VI
 
 44
 Finally, Perry challenges the district court's methodology in applying the Sentencing Guidelines as violative of the ex post facto clause of the Constitution. This issue was not reached by the district court. Following the court's ruling that it would not recalculate the Kentucky and Alabama offense levels, the court inquired whether this ruling would moot the issue of whether the 1988 or 1992 version of the guidelines should be operative in this case. Counsel for the defendant represented to the court that it did indeed moot this issue. Because the issue was not raised before the district court, it is not properly before this Court. Accordingly, we affirm his convictions.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 A sentence of 136 months for count one to which a consecutive sentence of 240 months on count two was imposed
 
 
 [2]
 Mr. Kelly became incapable of testifying as the result of an assault which occurred on September 19, 1992
 
 
 [3]
 Waugh testified at trial that she picked out Perry's photograph from the photo array. She did not make an in court identification of Perry
 
 
 [4]
 The court should consider the "opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification, itself." Id. at 114
 
 
 [5]
 Below, Perry argued that the district court in Kentucky erred by increasing his offense level by three points for displaying a dangerous weapon, a wooden gun. Although Perry conceded that a fake gun is considered a weapon under the guidelines, he argued that there was no evidence that it had been displayed, brandished, or ever seen. J.A. 386
 
 
 [6]
 An appeal of that conviction and sentence is pending before the United States Court of Appeals for the Eleventh Circuit. Appellant's Brief at 23
 
 
 [7]
 The court found that Perry, who was clean shaven when he robbed the bank, refused to shave his beard to make it more difficult for the teller to identify him
 
 
 [8]
 Essentially, U.S.S.G. Sec. 5G1.3(c) is a grouping exercise. In Perry's case, all three bank robberies are to be hypothetically aggregated or "grouped" under U.S.S.G. Sec. 3D1.4. In doing so, one must avoid the pitfall of including the gun enhancements under 18 U.S.C. Sec. 924(c). Under U.S.S.G. Sec. 3D1.1(b), mandatory consecutive sentences (such as for Sec. 924(c)) are exempt from the grouping rules and are not guideline driven. Rather, gun enhancements are, by statute, added consecutively to any other sentence imposed
 
 
 [9]
 Following the methodology can be a complicated undertaking. Recognizing this, General Counsel to the Sentencing Commission, John Steer, wrote a letter, dated January 6, 1994, explaining his interpretation of U.S.S.G. Sec. 5G1.3(c) to Probation Officer Tony Garoppolo
 
 
 [10]
 For the purposes of the "grouping" analysis under U.S.S.G. Sec. 5G1.3(c), only the bank robbery sentences are to be considered. Perry was also sentenced in Alabama to serve 60 months for the use of a firearm during a crime of violence (count two). Under 18 U.S.C. Sec. 924(e), the firearm sentence of 60 months was imposed to run consecutively to any of the federal sentences
 
 
 [11]
 Because the Alabama and Kentucky bank robberies are hypothetically grouped, they do not count in determining Perry's criminal history
 
 
 [12]
 Perry was sentenced to serve 97 months for the Kentucky bank robbery; he was sentenced to a concurrent 147 months for the Alabama bank robbery. As of the date of the West Virginia sentencing, Perry had served approximately 24 months of the bank robbery total (147 months), leaving 123 months undischarged. (J.A. 367)
 
 
 [13]
 A sentence of 136 months was outside the guideline range for the West Virginia bank robbery (84-105 months). Nevertheless, the sentencing court was not required to "depart" upward. The court could have imposed a sentence of 105 months to run consecutively with the undischarged 123 months. Effectively, Perry received a consecutive sentence of 13 months; this was well within the scope of the trial court's discretion
 
 
 [14]
 The district court is obliged to do so "only when prejudice can be presumed from the alleged constitutional violation, regardless of the facts of the particular case, and only when the right asserted is so fundamental that its violation would undercut confidence in the guilt of the defendant." Custis, 988 F.2d at 1362
 
 
 [15]
 Federal Rule of Criminal Procedure 35 also provides an avenue, albeit a limited one, for relief