UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

LARRY WADE McVAY, II,
        *Defendant-Appellant.*

No. 00-4762

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., Chief District Judge.
(CR-00-181)

Argued: September 28, 2001

Decided: February 1, 2002

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished opinion. Judge Traxler wrote the majority
opinion, in which Judge Luttig joined. Judge King wrote a dissenting
opinion.

## COUNSEL

**ARGUED:** John Herman Hare, Assistant Federal Public Defender,
Columbia, South Carolina, for Appellant. Stacey Denise Haynes,
Assistant United States Attorney, Columbia, South Carolina, for
Appellee. **ON BRIEF:** Scott N. Schools, United States Attorney,
Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

TRAXLER, Circuit Judge:

Larry Wade McVay, II, appeals the sentence imposed by the district court following his plea of guilty to armed bank robbery. *See* 18 U.S.C.A. §§ 2113(a) & (d) (West 2000). McVay contends that the district court improperly sentenced him as a career offender under United States Sentencing Guideline § 4B1.1 (1998), because one of the two prior state court predicate convictions qualifying him for treatment as a career offender was imposed in violation of his right to court-appointed counsel. We affirm.

### I.

McVay was charged with conspiracy to commit armed bank robbery, *see* 18 U.S.C.A. § 371 (West 2000), and armed bank robbery, *see* 18 U.S.C.A. § 2113(a) & (d). He subsequently pleaded guilty to the § 2113(a) & (d) count pursuant to a written plea agreement. Because McVay had two prior felony convictions, McVay's presentence report provided that he should be sentenced as a career offender under U.S.S.G. § 4B1.1.[1] The two convictions, both of which occurred in Lexington County, South Carolina, were for second degree burglary in July 1994, and for common law robbery in February 1996.

---

[1]Section 4B1.1 of the United States Sentencing Guidelines provides in pertinent part:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

McVay objected to being sentenced as a career offender by challenging the 1996 state conviction for common law robbery. Specifically, McVay claimed that the conviction had been obtained in violation of his Sixth Amendment right to court-appointed counsel because he had requested and was denied court-appointed counsel prior to his entering a plea of guilty to the charge.[2] The district court adjourned the sentencing hearing to allow briefing and the submission of additional evidence in support of the challenge, but ultimately overruled McVay's objection to the career offender designation. McVay was then sentenced to 188 months of imprisonment followed by five years of supervised release, and ordered to pay restitution.

## II.

### A.

As a general rule, a district court must count a prior state court offense that has not been reversed, vacated or invalidated as a predicate conviction for purposes of the § 4B1.1 career offender enhancement, assuming it otherwise qualifies under that section. *See United States v. Bacon*, 94 F.3d 158, 161-62 (4th Cir. 1996). Thus, McVay's common law robbery conviction "counts as a predicate offense under § 4B1.1 unless federal or constitutional law provides an avenue for . . . collateral attack." *Id.* at 162. In *Custis v. United States*, 511 U.S. 485, 496 (1994), however, the Supreme Court severely restricted that avenue. Specifically, the Court held that a defendant in a federal sentencing proceeding has no right to collaterally challenge a prior state court conviction used to enhance his sentence, even on federal constitutional grounds, with the single exception of cases in which the defendant can establish that the prior state conviction was obtained in violation of the Sixth Amendment right to court-appointed counsel as established by the Court in *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See Custis*, 511 U.S. at 487, 496.

In *Gideon*, the Supreme Court held that the Sixth Amendment, as applied to the states via the Fourteenth Amendment, requires states to

---

[2]McVay does not collaterally attack his 1994 conviction for second degree burglary. It is undisputed that McVay waived attorney representation and proceeded *pro se* in that proceeding.

provide counsel for defendants financially unable to employ counsel, unless the right is competently and intelligently waived. *See Gideon*, 372 U.S. at 344-45. Because this failure to appoint counsel for an indigent defendant is considered a jurisdictional defect which voids the state conviction, *see Johnson v. Zerbst*, 304 U.S. 458, 468 (1938), the *Custis* Court made it clear that this constitutional challenge alone falls within an exception to the general rule prohibiting such collateral attacks upon state convictions used as predicates for sentence enhancement. *Custis*, 511 U.S. at 496.

Two primary considerations compelled the Supreme Court's refusal in *Custis* to allow collateral challenges beyond those based upon a state's imposition of a conviction in violation of an indigent defendant's right to court-appointed counsel:

> ease of administration and the interest in promoting the finality of judgments. With respect to the former, [the Court] noted that resolving non-*Gideon*-type constitutional attacks on prior convictions "would require sentencing courts to rummage through frequently nonexistent or diffi-cult to obtain state-court transcripts or records." 511 U.S., at 496. With respect to the latter, [it] observed that allowing collateral attacks would "inevitably delay and impair the orderly administration of justice" and "deprive the state-court judgment of its normal force and effect."

*Daniels v. United States*, 121 S. Ct. 1578, 1581 (2001).

Accordingly, in a federal sentencing proceeding, once the govern-ment establishes the fact of prior conviction, the burden rests upon the defendant to show that the conviction sought to be used as a predicate conviction under § 4B1.1 is subject to a collateral challenge under the *Gideon* exception to *Custis*. *See United States v. Jones*, 977 F.2d 105, 109 (4th Cir. 1992); *see also Parke v. Raley*, 506 U.S. 20, 31 (1992) ("[E]ven when a collateral attack on a final conviction rests on consti-tutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defen-dant.").

B.

In this case, McVay asserts that his 1996 state court conviction for common law robbery was obtained in violation of his right as an indigent defendant to court-appointed counsel under *Gideon*. Therefore, we agree that it falls within the exception to the rule announced in *Custis* and can be considered on the merits. However, we disagree with McVay's assertion that he has satisfied his burden of proving that the state's denial of court-appointed counsel to him, based upon his financial condition at the time, was a constitutionally infirm act.

Consistent with the Sixth Amendment, South Carolina law provides that:

> [a]ny person entitled to counsel under the Constitution . . . shall be so advised and *if it is determined that the person is financially unable to retain counsel then counsel shall be provided upon order of the appropriate judge* unless such person voluntarily and intelligently waives his right thereto.

S.C. Code Ann. § 17-3-10 (Law. Co-op. 1985) (emphasis added). To implement this protection, the Supreme Court of South Carolina has adopted Supreme Court Rule 602 to guide the defense of indigents. Rule 602 requires that every accused be taken before an officer of the court, where they are informed of the nature of the charges filed against them, as well as of their right to court-appointed counsel if they are financially unable to employ counsel. If the accused represents that he is financially unable to employ counsel, he may complete an Affidavit of Indigency in the county where he is charged. *See* Rule 602(b), SCACR. The rule further provides that:

> Upon an examination of [the] completed Affidavit of Indigency . . ., by the officer designated for the purpose of determining indigency, along with other facts alleged, a *presumption of non-indigency is created if the gross income of the accused exceeds $125 per week*. The baseline figure for non-indigency is increased by $20 per dependent.

Rule 602(b)(3), SCACR (emphasis added). However, this minimum threshold for non-indigency creates only a rebuttable presumption:

> Where the accused's income exceeds the presumptive amount and a presumption of non-indigency is created, *but liabilities and debts exist as complicating factors, a final determination of indigency may be made by the judge with jurisdiction over the court in which the matter is to be heard.*

*Id.*

Shortly after his 1996 arrest for robbery in Lexington County, McVay completed an Affidavit of Indigency seeking court-appointed counsel, indicating that he was working 26 hours per week at a wage of $7.00 per hour for a gross weekly income of $182 per week. Therefore, even working part-time hours, McVay's income exceeded the weekly threshold of Rule 602 by $57 per week. McVay testified that he was informed by the state clerk of court that he made too much money to qualify for appointed counsel and that his request for counsel was being denied. McVay, in his early 20's at the time, pleaded guilty several months later before the circuit judge in Lexington County and received a custodial sentence of one to six years under South Carolina's Youthful Offender Act. At no time in the interim, or on appeal, did McVay challenge the presumption of non-indigency under the rule or otherwise pursue a request for court-appointed counsel before the presiding judge.

In this proceeding, McVay does not challenge Rule 602, or its presumption of non-indigency, on its face. Rather, McVay contends that the state's application of the presumption to him resulted in an unconstitutional deprivation of his right to court-appointed counsel because he can prove that he was, in fact, financially unable to employ counsel based upon his circumstances at the time. In particular, McVay testified before the district court that he contacted two attorneys in the Lexington County area after he was denied counsel by the state based upon his income level, but that he was quoted fees of $8,000 and $10,000 and required to pay one-half of the respective fees up front before either would agree to the representation. McVay asserts that he did not have the requisite down-payment in available assets, and set about to save the requested down-payment from his part-time wages, but was unable to do so before his case was called for trial in July. McVay further testified that when his case was called to trial, he was

told the State was ready to proceed and was offered a plea, which he accepted. According to McVay, he was not questioned about his right to have an attorney represent him or about whether he was waiving his right to have court-appointed counsel. Consequently, McVay asserts, he was forced to enter a guilty plea and be sentenced without benefit of his right to court-appointed counsel.[3]

Like the district court, we are satisfied that McVay has failed to establish that his 1996 state court conviction for common law robbery was obtained in violation of his Sixth Amendment right to court-appointed counsel.

First, South Carolina Supreme Court Rule 602 merely sets forth a threshold income figure, above which a rebuttable presumption of non-indigency is created. In his application for court-appointed counsel, McVay represented to the court that he was making $182 a week, working only 26 hours per week. Thus, even at part-time status, McVay's income exceeded Rule 602's presumed non-indigent income level. At no time did McVay contest the presumption, present evidence that the $125 threshold figure was inadequate as applied to him, offer evidence of liabilities or debts that served as factors complicating his ability to hire counsel, or otherwise offer information that he believed would show him to be unable to employ counsel notwithstanding his income level and ability to work. Nor did he ask the

[3]Not surprisingly, neither the prosecuting attorney nor the circuit judge who accepted the plea could recall the specific case when contacted by the government, and the state court transcript of McVay's plea was no longer available. Because McVay failed to establish that he was entitled to court-appointed counsel in the first instance, the absence of the state court record is of no determining consequence in this proceeding. However, we note that both the judge and the prosecuting attorney did offer statements concerning their customary practice in cases involving unrepresented defendants. *See United States v. Hoggard*, 61 F.3d 540, 543 (7th Cir. 1995) (noting propriety of accepting evidence of the "'custom and the practice' of the trial court in following proper procedures" in such circumstances); *see also Parke v. Raley*, 506 U.S. 20, 30 (1992) (noting that the "presumption of regularity" accompanying prior convictions offered for purposes of sentence enhancement prevents a defendant from merely pointing to a missing or silent trial transcript to prove the invalidity of the prior conviction on collateral review).

circuit court to review his financial status. Consequently, McVay failed to establish that he was financially unable to hire private counsel at the time of his arrest or plea.

This leads us to McVay's attempt to demonstrate in this proceeding that he was financially unable to retain counsel in 1996, based upon his unique circumstances at the time. Specifically, McVay claims that he was financially unable to employ counsel because his actual expenses nearly equaled his part-time income and because, between the time he was denied court-appointed counsel and the time he appeared before the circuit court for sentencing, he was unable to retain either of the two attorneys he contacted because they required down payments of $4000 and $5000 respectively.

As an initial premise, we are hesitant to entertain a collateral attack upon a state court conviction serving as a predicate offense for purposes of U.S.S.G. § 4B1.1, and thereby upset our usual respect for the finality of such convictions, based upon evidence of indigency which was never placed before the state court for consideration, either on direct appeal or in state habeas proceedings. The Sixth Amendment requires a state to appoint counsel to an accused who establishes financial inability to retain counsel, *see Gideon*, 372 U.S. at 344-45, and McVay plainly failed to do so before the state court.

Nevertheless, we need not answer today the question of whether and under what circumstances a criminal defendant can collaterally attack a predicate state court conviction based upon evidence of indigency never submitted to that court because, even were we to decide that McVay's additional evidence was properly considered by the district court, that evidence likewise fails to establish that he was financially unable to employ counsel in 1996. McVay's showing consists of evidence that he contacted two attorneys to represent him after his application for court-appointed counsel was denied, and that he was unable to pay either of their requested down payments. McVay testified that he set about to save the down-payment on his part-time income, but made no attempt to seek full-time employment or a second job to raise his income level. Nor, apparently, was any effort made to hire other counsel, who might not require such a down payment, or to borrow the money requested by the two attorneys he did contact. To militate against this failure, McVay claims that he

believed the part-time job was the best he could do because he lacked transportation, yet when outlining his debts and liabilities in support of his claim of indigency, McVay included rent, utilities, food *and* payment of his cousin's car insurance because his cousin "took [him] anywhere [he] needed to go." J.A. 248.

All in all, McVay's showing in this proceeding falls far short of that necessary to retroactively establish indigency for purposes of the Sixth Amendment and void his state court conviction. This is not a case in which an accused was denied the opportunity to establish indigency and obtain court-appointed counsel as required under *Gideon*. McVay was given an opportunity to establish that he was financially unable to retain counsel to represent him in the defense of the 1996 charges against him, but he did not make that requisite showing. He now seeks to collaterally challenge the conviction as being violative of his Sixth Amendment right to court-appointed counsel as espoused in *Gideon*, based upon evidence never submitted to the state. But, even this showing — which rests principally upon his current testimony that two attorneys he contacted to represent him asked for a cash down-payment which he did not have and that the income he made working part-time was the best he could do at the time due to his transportation difficulties — is insufficient to prove that he was financially unable to obtain counsel to represent him. The Sixth Amendment requires a state to appoint counsel to an indigent defendant, but this does not mean that the accused's ability to employ counsel must be measured without regard to the accused's ability to maximize his income, work to his potential, or otherwise make the personal sacrifices necessary to bring his assets to the level necessary to realize (in cash) his financial ability to employ counsel. In this proceeding, McVay has not shown that any such reasonable attempt was made.

### III.

For the foregoing reasons, we agree that McVay has failed to carry his burden of proving that his 1996 state court conviction was obtained in violation of his constitutional rights and, therefore, we affirm the sentence imposed by the district court.

*AFFIRMED*

KING, Circuit Judge, dissenting:

I write separately and briefly in dissent. My disagreement stems from the majority's conclusion that McVay was properly sentenced as a career offender, in spite of his contention that one of his prior state convictions is tainted by the denial of his right to counsel. In rejecting McVay's challenge because he "fails to establish that he was financially unable to employ counsel in 1996," *ante* at 8, I believe the majority misapprehends the evidence of McVay's indigency.

I.

As the majority observes, the Supreme Court, in *Custis v. United States*, 511 U.S. 485, 496 (1994), recognized that a defendant may collaterally attack a state court conviction used to enhance his federal sentence when the conviction was obtained in violation of the Sixth Amendment right to counsel.[1]  *See also Daniels v. United States*, 121 S. Ct. 1578, 1583 (2001) ("If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceeding."). The rationale underlying *Custis* and *Daniels* is a longstanding principle: the failure to provide counsel to an indigent defendant is a jurisdictional defect which voids a conviction. *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938).[2]

---

[1]In *Custis*, the Supreme Court dealt with a statutory sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The Court's holding, however, also applies to sentencing enhancements pursuant to U.S.S.G. § 4B1.1. *See United States v. Bacon*, 94 F.3d 158, 163 (4th Cir. 1996) ("[L]ike many of our sister circuits, we find [*Custis*'s] reasoning equally compelling in the context of Guidelines sentencing.").

[2]Because McVay's evidence of indigency implicates whether his conviction was jurisdictionally defective, we are compelled to consider his evidence, regardless of whether it was first presented in state court. Indeed, the district court properly accepted and considered McVay's evidence. *Cf. Kelly v. United States*, 29 F.3d 1107, 1113 (7th Cir. 1994) (vacating defendant's sentencing enhancement based on argument, raised for first time on 28 U.S.C. § 2255 motion, that defendant's conviction suffered from jurisdictional defect and "a jurisdictional defect cannot be procedurally defaulted").

## II.

During the period between his state-court indictment in February 1996 and his conviction in July 1996, McVay was working as a picture framer. He was employed twenty-six hours per week at a rate of $7.00 per hour, with a gross weekly income of approximately $182. In his October 2000 sentencing proceeding in district court, McVay testified that, during the relevant period in 1996, he took home, after taxes, about $160 per week. His affidavit of indigency, filed in the state court of Lexington County, South Carolina, on March 26, 1996, reflects that McVay had no savings and no other source of income. According to McVay, he had normal debts and liabilities, including a $275 monthly rent payment, $80 to $100 in monthly utility costs, and $60 to $65 weekly in food expenses. Allowing for these basic living expenses, McVay was left with a disposable income of virtually nothing. Moreover, when we consider that McVay, according to his testimony, was also paying for his cousin's car insurance (in exchange for receiving transportation to work), he plainly lacked the funds necessary to hire a lawyer to defend him against his common law robbery charge. In any event, it is uncontradicted that —in spite of his dire financial circumstances — McVay actually attempted to retain counsel in the Lexington County area. He sought out two separate lawyers, and he was quoted lump-sum fees of $8,000 and $10,000, respectively, with each lawyer demanding half the money up front.[3] McVay, however, lacked any funds to make a $4,000 or $5,000 up-front payment to a lawyer.

The majority opinion hypothesizes that McVay would have been able to afford counsel if he had been more industrious and worked full-time, or if he had borrowed the money necessary to make the up-front payment. I see such speculation as unduly optimistic. First,

---

[3]It is not surprising, or even unusual, that these lawyers would demand significant up-front payments from McVay. Common sense, as well as time-honored practice, dictates that defense lawyers procure their fees before a criminal case is concluded. On the one hand, if a defendant is convicted, he will probably be incarcerated and unable to pay fees, while, on the other, an acquitted defendant generally lacks any great incentive to then pay his defense lawyer. As such, in cases such as this, lawyers must get the money "up front," or risk not being paid at all.

McVay makes the entirely plausible claim that he could not procure full-time employment because he lacked his own transportation. Second, the contention that McVay could have borrowed the necessary funds to retain counsel is simply unrealistic. As a convicted felon on bond facing a second felony indictment, with no assets and a low-paying part-time job, McVay was an entirely unlikely — and unsatisfactory — candidate for a bank loan.

Given the uncontradicted evidence that McVay was indigent when he was denied counsel in connection with his July 1996 conviction for common law robbery, the district court's finding to the contrary is clearly erroneous. Because McVay was denied his constitutional right to counsel, his July 1996 conviction cannot be considered in calculating whether he is a career offender pursuant to U.S.S.G. § 4B1.1. As such, the district court erred in sentencing McVay as a career offender.[4] I would therefore vacate the sentence and remand for resentencing, to be imposed without consideration of McVay's tainted conviction.

---

[4]Under U.S.S.G. § 4B1.1, McVay's status as a career offender resulted in an offense level of 31 and a criminal history category of VI, which yielded a guidelines range of 188 to 235 months. Properly excluding McVay's 1996 common law robbery conviction from the sentencing calculation, however, would result in an offense level of 21 and a criminal history category of II, which carries a guidelines range of 41 to 51 months. As such, the tainted conviction resulted in an increase to McVay's sentence of at least 137 months.