KING, Circuit Judge,
dissenting.
I write separately and briefly in dissent. My disagreement stems from the majority’s conclusion that McVay was properly sentenced as a career offender, in spite of his contention that one of his prior state convictions is tainted by the denial of his right to counsel. In rejecting McVay’s challenge because he “fails to establish that he was financially unable to employ counsel in 1996,” ante at 666, I believe the majority misapprehends the evidence of McVay’s indigency.
I.
As the majority observes, the Supreme Court, in Custis v. United States, 511 U.S. 485, 496, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), recognized that a defendant may collaterally attack a state court conviction used to enhance his federal sentence when the conviction was obtained in violation of the Sixth Amendment right to counsel.[1] See also Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 1583, 149 L.Ed.2d 590 (2001) (“If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceeding.”). The rationale underlying Custis and Daniels is a longstanding principle: the failure to provide counsel to an indigent defendant is a jurisdictional defect which voids a conviction. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[2]
*668 II.
During the period between his state-court indictment in February 1996 and his conviction in July 1996, McVay was working as a picture framer. He was employed twenty-six hours per week at a rate of $7.00 per hour, with a gross weekly income of approximately $182. In his October 2000 sentencing proceeding in district court, McVay testified that, during the relevant period in 1996, he took home, after taxes, about $160 per week. His affidavit of indigency, filed in the state court of Lexington County, South Carolina, on March 26, 1996, reflects that McVay had no savings and no other source of income. According to McVay, he had normal debts and liabilities, including a $275 monthly rent payment, $80 to $100 in monthly utility costs, and $60 to $65 weekly in food expenses. Allowing for these basic living expenses, McVay was left with a disposable income of virtually nothing. Moreover, when we consider that McVay, according to his testimony, was also paying for his cousin’s car insurance (in exchange for receiving transportation to work), he plainly lacked the funds necessary to hire a lawyer to defend him against his common law robbery charge. In any event, it is uncontradicted that — in spite of his dire financial circumstances — McVay actually attempted to retain counsel in the Lexington County area. He sought out two separate lawyers, and he was quoted lump-sum fees of $8,000 and $10,000, respectively, with each lawyer demanding half the money up front.[3] McVay, however, lacked any funds to make a $4,000 or $5,000 up-front payment to a lawyer.
The majority opinion hypothesizes that McVay would have been able to afford counsel if he had been more industrious and worked full-time, or if he had borrowed the money necessary to make the up-front payment. I see such speculation as unduly optimistic. First, McVay makes the entirely plausible claim that he could not procure full-time employment because he lacked his own transportation. Second, the contention that McVay could have borrowed the necessary funds to retain counsel is simply unrealistic. As a convicted felon on bond facing a second felony indictment, with no assets and a low-paying part-time job, McVay was an entirely unlikely — and unsatisfactory' — candidate for a bank loan.
Given the uncontradicted evidence that McVay was indigent when he was denied counsel in connection with his July 1996 conviction for common law robbery, the district court’s finding to the contrary is clearly erroneous. Because McVay was denied his constitutional right to counsel, his July 1996 conviction cannot be considered in calculating whether he is a career offender pursuant to U.S.S.G. § 4B1.1. As such, the district court erred in sentencing McVay as a career offender.[4] I would *669 therefore vacate the sentence and remand for resentencing, to be imposed without consideration of McVay’s tainted conviction.

. In Custis, the Supreme Court dealt with a statutory sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The Court’s holding, however, also applies to sentencing enhancements pursuant to U.S.S.G. § 4B1.1. See United States v. Bacon, 94 F.3d 158, 163 (4th Cir.1996) (”[L]ike many of our sister circuits, we find [Custis’s] reasoning equally compelling in the context of Guidelines sentencing.”).

. Because McVay’s evidence of indigency implicates whether his conviction was jurisdictionally defective, we are compelled to consider his evidence, regardless of whether it was first presented in state court. Indeed, the district court properly accepted and considered McVay’s evidence. Cf. Kelly v. United States, 29 F.3d 1107, 1113 (7th Cir.1994) (vacating defendant’s sentencing enhancement based on argument, raised for first time on 28 U.S.C. § 2255 motion, that defendant’s conviction suffered from jurisdictional defect and "a jurisdictional defect cannot be procedurally defaulted”).

. It is not surprising, or even unusual, that these lawyers would demand significant upfront payments from McVay. Common sense, as well as time-honored practice, dictates that defense lawyers procure their fees before a criminal case is concluded. On the one hand, if a defendant is convicted, he will probably be incarcerated and unable to pay fees, while, on the other, an acquitted defendant generally lacks any great incentive to then pay his defense lawyer. As such, in cases such as this, lawyers must get the money “up front,” or risk not being paid at all.

. Under U.S.S.G. § 4B1.1, McVay's status as a career offender resulted in an offense level of 31 and a criminal history category of VI, which yielded a guidelines range of 188 to 235 months. Properly excluding McVay’s 1996 common law robbery conviction from the sentencing calculation, however, would result in an offense level of 21 and a criminal history category of II, which carries a guidelines range of 41 to 51 months. As such, the tainted conviction resulted in an increase to McVay’s sentence of at least 137 months.