# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2248

SHAVAUGHN WILSON-EL,

*Petitioner-Appellant*,

*v.*

ALAN FINNAN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:06-cv-172-LJM-WTL—**Larry J. McKinney**, *Judge.*

SUBMITTED AUGUST 21, 2008*—DECIDED SEPTEMBER 12, 2008

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This case requires us to consider whether, when a prison disciplines an inmate for being a "habitual offender," it must permit the inmate to chal-

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. This appeal is therefore submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

lenge the underlying disciplinary convictions that provide the predicate for the later finding. We conclude that the habitual offender proceeding does not have the effect of expanding the rights that the prisoner otherwise has to challenge any of the earlier offenses. This means that Indiana prisoner Shavaughn Wilson-El cannot succeed in his latest effort to obtain *habeas corpus* relief from one of his disciplinary convictions.

## I

On August 18, 2004, Wilson-El was in his cell apparently waiting to eat. He pushed his intercom button, summoning Correctional Officer Brock, to complain that he had been given the wrong tray. Officer Brock told Wilson-El that the intercom button was to be used only for emergencies, but Wilson-El ignored Brock and pushed the button three more times, while calling Brock "a dumb f***ing bitch." Officer Brock wrote up a conduct report charging Wilson-El with class C offense # 348, which covers insolence, vulgarity, or profanity toward staff. The next day, Wilson-El was notified of the charge, pleaded not guilty, and requested a lay advocate.

A three-member Conduct Adjustment Board conducted a disciplinary hearing on the charge on August 23, 2004, and found Wilson-El guilty. The Board recommended that he be punished with a one-month loss of commissary privileges and a written reprimand; those sanctions were affirmed by the Facility Head and the Final Reviewing Authority for the prison.

This was not Wilson-El's first encounter with the prison disciplinary system. (Indeed, this appeal is not our first encounter with him either: see *Wilson-El v. Finnan*, 275 F.App'x 547 (7th Cir. 2008).) Accordingly, on August 25, 2004, the prison prepared a conduct report charging Wilson-El with being a habitual conduct rule violator, because he had been found guilty in eight prison disciplinary proceedings in a two-month period. His insolence conviction of August 23 was one of those eight. On August 30, Wilson-El was found guilty of the habitual offender charge. That finding led to a more serious sanction: revocation of 180 days of good-time credit.

Wilson-El then filed a petition for a writ of *habeas corpus*, under 28 U.S.C. § 2254. His petition listed August 23, 2004, as the date of his "guilt determination," and it described his conviction for insolence. In it, he contended that the Board violated due process because one of its members had direct knowledge of his case and an interest in the outcome, and he complained generally about the conduct of the proceeding. His complaint said nothing about his habitual offender conviction, which was the one that led to the loss of his good-time credits. Instead, as he has explained more fully in his brief on appeal, his theory is that his custody was extended by the second conviction, but the second conviction rested in part on the earlier insolence conviction, and thus the earlier conviction indirectly led to a loss of liberty.

The district court rejected Wilson-El's argument. It looked only to the insolence conviction and found that the written reprimand and the one-month loss of com-

missary privileges "did not constitute a deprivation of sufficient severity to support the 'in custody' requirement of § 2254(a)," nor a loss of a liberty interest for purposes of the Due Process Clause, see *Sandin v. Conner,* 515 U.S. 472 (1995). The district court also found that Wilson-El had not adequately explained how the later use of his insolence conviction in the habitual offender determination made a difference. It therefore dismissed his petition.

## II

Logically, there are only three things that Wilson-El might be challenging here: (1) his original insolence conviction, by itself, (2) his habitual offender conviction, by itself, or (3) the use of the insolence finding to support the habitual offender designation and punishment. We address the first two briefly, because it helps to explain why we find no merit in the third, which we believe is what Wilson-El is trying to argue.

It is easy to eliminate the second of these three possible theories, because, as we have already noted, Wilson-El's complaint does not say a word about his habitual offender conviction. The state points out that this conceivably could be the end of the case. Although it does not say what minimum number of underlying convictions would suffice to prove this offense, it does say that knocking out just one out of eight would make no difference—the other seven would still be enough to support the designation. Wilson-El does not refute this point, and it would be enough on its own to affirm the judgment of the district court rejecting Wilson-El's *habeas corpus* petition.

But perhaps Wilson-El is suggesting that the habitual offender conviction does not rest on such a mechanical basis, and that if he could eliminate his insolence conviction, then the Board may have weighed his record differently. In case that is his theory, we turn first to the insolence conviction in isolation. Not every prison disciplinary proceeding is capable of giving rise to a later case under 42 U.S.C. § 1983. As the Supreme Court held in *Sandin*, if the prisoner wants to assert that a disciplinary proceeding violated his due process rights, he must first show that he is asserting a deprivation of life, liberty, or property. The Court specifically rejected the proposition that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." 515 U.S. at 484. Instead, liberty interests are implicated only if the state imposes an "atypical, significant deprivation." *Id.* at 486. The Court also acknowledged that claims might arise under other provisions of the Constitution, including the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment. See *id.* at 487 n.11. Prisoners frequently bring § 1983 cases challenging the conditions of their confinement under one or more of those theories. See, *e.g., Estelle v. Gamble,* 429 U.S. 97 (1976) (Eighth Amendment challenge to deliberate indifference to serious medical need); *Turner v. Safely,* 482 U.S. 78 (1987) (First Amendment and substantive due process challenge to mail and marriage regulations); *Farmer v. Brennan,* 511 U.S. 825 (1994) (Eighth Amendment challenge to violent prison conditions); *Lewis v. Casey,* 518 U.S. 343 (1996) (First Amendment complaint

about deprivation of access to courts); *Cutter v. Wilkinson,* 544 U.S. 709 (2005) (challenge under Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(1)-(2), to prison's failure to accommodate religious practices). As Wilson-El's insolence case illustrates, however, there are many prison disciplinary proceedings that do not involve constitutionally protected interests. Prisoners dissatisfied with the outcome of those proceedings have only the remedies provided by the prison system and, if available, the state courts.

Rephrasing the question we posed earlier, the issue is whether the use of a disciplinary conviction that did not implicate interests protected by the federal Constitution or laws, to help prove a different offense, somehow opens the door to a belated attack on the first conviction. In the area of criminal sentences that rely on earlier convictions, the Supreme Court has left only the narrowest of openings for collateral challenges to predicate convictions. Thus, in *Custis v. United States,* 511 U.S. 485 (1994), the Court held that a defendant has no constitutional right to pursue a collateral attack on the validity of a previous state conviction that was used to enhance a sentence under the Armed Career Criminal Act, unless the earlier conviction was obtained in violation of the right to counsel. Similarly, in *Daniels v. United States,* 532 U.S. 374 (2001), the Court held that a federal prisoner could not attack earlier convictions using 28 U.S.C. § 2255, unless the right to counsel was violated. *Lackawanna County Dist. Atty. v. Coss,* 532 U.S. 394 (2001), came to the same conclusion for state prisoners who wanted to allege ineffective assistance

of counsel with respect to prior convictions that were used to enhance a sentence. Only if counsel was entirely missing, in a way that violated the defendant's rights under *Gideon v. Wainwright,* 372 U.S. 335 (1963), could such a challenge be raised.

On one level, the sentencing cases are distinguishable from Wilson-El's situation. Those prisoners all had an opportunity to challenge their earlier convictions at the time they were imposed, whereas Wilson-El had no right to a federal tribunal (or for that matter a state tribunal other than the one furnished by the prison system) to review his insolence conviction. But the concern the Court expressed for finality, and its willingness to give that concern priority even in the face of earlier convictions that may have been tainted by the Sixth Amendment violation of ineffective assistance of counsel, suggest to us that the Court would frown on any holding that opened the door in the present situation to collateral attacks on underlying disciplinary convictions.

But, Wilson-El argues, he would have had an opportunity to pursue a *habeas corpus* petition if the penalty for his insolence conviction had been the deprivation of good-time credits, rather than merely a written reprimand and a brief suspension of commissary privileges. That is true, but it assumes too much. The prison was never under any obligation to give Wilson-El any particular level of commissary privileges, any more than it was under an obligation to assign him to the general population wing of the prison or the administrative detention wing. See *Sandin, supra.* If it had simply kept an informal log describ-

ing how well or badly Wilson-El behaved every day, and after a certain number of bad days it held a hearing to determine whether he should be punished as a social misfit in the prison, he would have no complaint. The fact that the prison has chosen, in effect, to keep track of his behavior by more formally recording the minor infractions he has accumulated should not, in our view, make a difference. We repeat that Wilson-El is not contesting the fact that the prison has found him guilty of violating the rules on eight prior occasions.

## III

Wilson-El apparently recognizes that he cannot challenge the insolence conviction as a separate matter, because it did not affect his custody. For the reasons we have explained, the fact that the insolence conviction played a role in the prison's designation of him as an habitual offender, and thus may indirectly have led to his loss of good-time credits, does not change matters. Since he has offered no reason (apart from his dissatisfaction with the insolence conviction) why his habitual offender finding violated the Constitution, we AFFIRM the district court's dismissal of his petition under 28 U.S.C. § 2254.